Francisco Umpierre, peticionario, *v.* Comisión Industrial de Puerto Rico compuesta de los Sres. Manuel León Parra, Presidente, y F. Paz Granela y Juan M. Herrero, Comisionados Asociados; y Sucn. del obrero Bernardo Villanueva, demandados.

Núm. 22.—*Sometido:* Diciembre 20, 1937. *Resuelto:* Febrero 24, 1938.

766

*Wilson P. Colberg*, abogado del peticionario; *Ponsa & Riefkohl*, abogados de la sucesión del obrero fallecido.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Bernardo Villanueva Díaz perdió su vida como consecuencia de lesiones que recibiera en un accidente ocurrídole mientras viajaba en un *truck* propiedad de su patrono Francisco Umpierre, el aquí peticionario. En 22 de julio de 1936 la Comisión Industrial de Puerto Rico resolvió que el patrono no estaba asegurado en la fecha del accidente, junio 6 de 1936. En oposición a la reclamación formulada por la sucesión del difunto obrero, el patrono interpuso las siguientes defensas:

1ª. Que el obrero se causó intencionalmente las lesiones que le produjeron la muerte.

2ª. Que el obrero desobedeció intencionalmente instrucciones expresas de su patrono en cuanto a andar sobre el *truck* estando éste en marcha, asumiendo así deliberadamente el riesgo de la lesión.

3ª. Que al actuar de tal modo, el obrero se salió del curso del empleo, por lo que no está protegido por la ley vigente, por haber sido culpable de imprudencia temeraria.

Celebrada la vista y oídas las partes interesadas, la Comisión Industrial resolvió que el obrero sufrió el accidente del trabajo bajo el patronazgo de Francisco Umpierre y amparado por la Ley núm. 45 de 1935 ((2) pág. 251), y condenó al patrono a pagar a la viuda e hijo del finado la suma de $1,717.62. No conforme, el patrono interpuso el presente recurso de revisión.

Los hechos probados y sobre los cuales no hay disputa entre las partes demuestran que Villanueva viajaba de Guaynabo hacia San Juan en un *truck* cargado de piedra, propiedad de su patrono; que iba sentado encima de la piedra en la parte de atrás del *truck;* y que mientras el vehículo estaba en movimiento trató de pasar a la parte delantera para sentarse al lado del chófer, con tan mala suerte que al poner el pie sobre el estribo derecho de la caja del asiento del conductor, resbaló, cayó al pavimento y le pasó la rueda delantera del *truck* sobre el vientre, falleciendo el mismo día como consecuencia de las lesiones que recibiera.

Alega el patrono recurrente que la Comisión Industrial erró:

1º. Al resolver que no había evidencia en el récord que demostrara que al obrero se le advirtiera el peligro que corría.

2º. Al resolver que para que existiera la imprudencia temeraria era necesario que al obrero se le advirtiera el peligro que corría.

3º. Al resolver que el obrero en este caso no desobedeció intencionalmente las órdenes del patrono.

4º. Al no resolver de acuerdo con la evidencia que el caso no es uno de los comprendidos en la ley que regula la materia, y al resolver que era compensable como accidente del trabajo.

5º. Al no resolver que el accidente ocurrió intencionalmente por parte del obrero y a sabiendas de que al actuar como actuó se salía del curso de su empleo y cometía un acto cuyas consecuencias no son compensables en el estatuto vigente.

Por estar relacionados entre sí, consideraremos dichos cinco señalamientos conjuntamente.

 Hemos examinado cuidadosamente la evidencia aducida por el patrono, para sostener que Villanueva fué culpable de imprudencia temeraria porque había sido advertido del peligro y se le había prohibido expresamente andar por encima de la piedra mientras el *truck* estuviese en movimiento. Y convenimos con la Comisión Industrial en que la prueba es insuficiente para sostener tal defensa. Lo único que aparece de la declaración de un peón del patrono y de la del mismo patrono es que éste daba instrucciones a los peones para que tuvieran cuidado al bajar de o al subir a los *trucks* y que en la oficina del patrono se había fijado un cartón en el que aparecían inscritas ciertas instrucciones sobre el particular; pero no existe prueba alguna de que tales instrucciones fuesen comunicadas directa y personalmente a Villanueva. Y la prueba demuestra que Villanueva no pudo enterarse de las instrucciones escritas, por no saber leer.

Para que el acto del obrero pueda ser calificado como imprudencia temeraria (*wilful misconduct*) y se le pueda negar la compensación, es necesario probar que el obrero actuó en contravención de órdenes expresas de su patrono y después de haber sido advertido del peligro que correría en la realización del acto prohibido. Así lo sostiene toda la jurisprudencia citada por el recurrente. Como ejemplos citaremos los siguientes casos:

"Lesiones resultantes de actos realizados en directa hostilidad y como un reto a las *órdenes positivas del patrono* referentes a instrumentalidades, sitios o cosas con respecto a los cuales el empleado no tiene obligación alguna que cumplir, y con los cuales su empleo no está relacionado, no son compensables." (Itálicas nuestras.) *Dickey* v. *Pittsburgh & L. E. R. Co.*, 297 Pa. 172, 146 Atl. 543.

"Si un empleado va a un departamento que no es el suyo, y es lesionado mientras trata de realizar precipitadamente un trabajo que él está autorizado a hacer en su departamento, la lesión no ha sido recibida en el curso del empleo, *cuando existe una regla conocida por*

*el empleado que restringe las actividades de los empleados a su propio departamento."* (Itálicas nuestras.) *Hyatt* v. *U. S. Rubber Reclaiming Co.,* 230 App. Div. (N. Y.) 743, 243 N. Y. Supp. 474.

"Un empleado que es lesionado en un departamento de la planta de su patrono, al cual, por razón del riesgo de que pudiera ser lesionado, *se le había dicho positivamente por sus superiores que no fuera,* no fué lesionado en el curso de su empleo; especialmente cuando fué a ese departamento a hacer trabajos para su propia conveniencia y para su beneficio pecuniario." (Itálicas nuestras.) *Kasper* v. *Liberty Foundry Co.,* (1932) Mo. App. 54 S. W. 2d. 1002.

Los numerosos casos citados por el recurrente sostienen la doctrina de que un empleado es culpable de imprudencia temeraria (*wilful misconduct*) y pierde su derecho a ser indemnizado, cuando después de haber sido advertido por su patrono del peligro que corre realiza el acto prohibido y asume el riesgo de ser lesionado. La imprudencia temeraria es algo más que la negligencia; envuelve la idea de una conducta cuasi criminal o sea la deliberada intención de realizar un acto prohibido con pleno conocimiento de sus probables consecuencias. Véanse: *Clark* v. *Los Angeles County,* 1 Cal. I. A. C.; *Haffenayer* v. *United Keanograph Film Mfg. Co.,* 1 Cal. A. C. Dec. 620. El recurrente, al invocar esa doctrina como la aplicable al caso de autos, dice en su alegato:

"La jurisprudencia ha llegado a sostener definitivamente en casos de esta naturaleza, que *un empleado que viola órdenes expresas de su patrono* y que sean dadas para su protección, se sale 'del curso de su empleo,' y si resulta lesionado, dicha lesión no ha sido recibida 'en el curso de su empleo' ni 'por motivo de su empleo' que son requisitos esenciales para determinar responsabilidad." (Itálicas nuestras.)

Sostiene además la jurisprudencia que el peso de la prueba, cuando se alega imprudencia temeraria, descansa sobre el demandado; que la defensa no queda debidamente probada cuando hay duda sobre la deliberada y temeraria exposición al peligro; y que cuando la lesión causa la muerte, la evidencia debe ser clara e inequívoca y de tal grado que esta-

blezca la defensa más allá de toda duda razonable, por el hecho de que los labios del obrero, sellados por la muerte, no pueden hacerse oír en su propia defensa. Véanse: *Hedges* v. *City of Los Angeles,* 1 Cal. I. A. C. Dec. 394; Honnold Vol. 1 pág. 568; *Freid* v. *Smith Lumber Co.,* 2 Cal. I. A. C. Dec. 117.

Somos de opinión que el patrono en el caso de autos no ha establecido satisfactoriamente su defensa de imprudencia temeraria. Ya hemos hecho constar que la prueba aducida para establecer el hecho de que Villanueva había recibido órdenes expresas del patrono es insuficiente. No habiéndose presentado prueba clara e inequívoca de que el obrero fuera expresamente advertido del peligro, y considerando que dicho obrero se encontraba en el *truck* con el consentimiento del patrono, en funciones de su empleo de conducir piedra desde la cantera para entregarla en la obra, no estamos autorizados para presumir que el acto de tratar de pasar desde la piedra en que iba sentado al sitio junto al chófer fuera realizado por Villanueva con el propósito deliberado de violar las órdenes de su patrono y de asumir el riesgo de ser lesionado. Más lógica sería la presunción de que Villanueva tan sólo trataba de encontrar un asiento menos peligroso y más cómodo que el que su patrono le había asignado sobre la piedra. No hubo error en la aplicación de la ley a los hechos que la comisión consideró probados. No erró la comisión al resolver que el accidente ocurrió en el curso del empleo del obrero y que el caso es compensable de acuerdo con la ley vigente.

Durante la vista del caso se hizo un esfuerzo por parte del patrono para demostrar que en el momento del accidente Villanueva no se encontraba en el curso ordinario de su empleo. A ese efecto declaró el patrono que el trabajo de Villanueva era el de llenar el *truck* en la cantera y vaciarlo en la obra a la cual iba destinada la piedra; y que mientras el *truck* estaba en movimiento no tenía ningún trabajo. Vista esta declaración se nos ocurre preguntar: ¿Cómo podía Vi-

llanueva cumplir su obligación de descargar la piedra, si no iba en el mismo *truck* que la conducía hasta la obra? A falta de prueba demostrativa de que se le prohibiera hacer el viaje en el mismo *truck* que conducía la piedra, debemos presumir que su presencia en el *truck* el día del accidente estaba relacionada con y era parte integrante de su obligación de cargar el *truck* en la cantera y vaciarlo en la obra. Y como consecuencia debemos resolver que el accidente que causó la muerte del obrero ocurrió en el curso ordinario de su empleo. En la Anotación que aparece en 23 A.L.R. pág. 1156 encontramos la siguiente jurisprudencia, que citamos con aprobación y consideramos aplicable al presente caso:

"Existen prohibiciones que limitan la esfera del empleo, y prohibiciones que se refieren únicamente a la conducta dentro de la esfera del empleo. La violación de una prohibición de esta última clase deja la esfera del empleo donde estaba, y por consiguiente no impedirá el cobro de una compensación. La violación de una prohibición de la primera clase coloca al obrero fuera de la esfera de su empleo." *Plumb* v. *Cobden Flour Mills Co:*, [1914; H. L.] A. C. (Eng.) 62, 7 B.R.C. 128, Ann. Cases, 1914 B, 495.

"Por consiguiente, la regla que debe aplicarse para determinar si una violación de una regla u orden coloca al obrero fuera de la esfera de su empleo es si la orden que fué desobedecida limitaba la esfera de tal empleo, o era simplemente una instrucción de no hacer ciertas cosas o de hacerlas en una forma determinada, dentro de la esfera del empleo." *Macechko* v. *Bowen Manufacturing Co.,* 179 App. Div. 573, 166 N. Y. Supp. 822.

La evidencia en este caso demuestra que la prohibición que se alega fué violada por Villanueva no limitaba la esfera de su empleo y solamente establecía una regla de conducta que debería ser observada dentro de la esfera del empleo. Villanueva se encontraba en el *truck* en el momento del accidente legalmente, con el consentimiento del patrono, acompañando la piedra hasta la obra, que era una función comprendida dentro de la esfera de su empleo. Las instrucciones del patrono se referían solamente a la conducta que debería observar el obrero mientras realizaba la indicada función.

■ Nos inclinamos a creer que Villanueva actuó negligentemente al tratar de pasarse al asiento delantero, sin detenerse a pensar en el peligro que corría; y más aún, que al hacerlo así asumió el riesgo de ser lesionado. Pero ni la negligencia ni la asunción del riesgo por parte del obrero pueden ser alegadas como defensa por el patrono. (Art. 15 Ley núm. 45, 1935.)

Convenimos con el patrono recurrente en que el Artículo 15 de la Ley núm. 45 de 1935 ( (1) pág. 251), denominada "Ley de Compensaciones por Accidentes del Trabajo," priva al patrono solamente de aquellas defensas específicamente enumeradas en el mismo artículo, o sea la negligencia contribuyente, la asunción del riesgo y la negligencia de un contratista o subcontratista independiente no asegurado bajo la misma ley; y no le priva de la defensa de "imprudencia temeraria" del obrero como única causa de la lesión, reconocida por el Artículo 4, inciso.4 de la misma ley como causa suficiente para que un accidente no sea compensable. Así lo resolvimos en el caso de *Bonilla* v. *Mitchel,* 51 D.P.R. 126.

■ Pero no basta probar la violación de una orden del patrono para establecer la defensa de imprudencia temeraria. Debe probarse además que el obrero tenía conocimiento de la existencia de la orden, y que la violación de ésta fué deliberada e intencional y nò meramente un acto impensado realizado bajo el impulso del momento. Véanse: *Frint Motor Car Co.* v. *Industrial Commission,* 168 Wis. 436, 170 N. W. 285; *Hyman Bros. B. & L. Co.* v. *Industrial Acc. Commission,* 180 Cal. 423; *Western P. R. R. Co.* v. *Industrial Acc. Comm.,* 180 Cal. 416; *Diestelhorst* v. *Industrial Acc. Comm.,* 32 Cal. App. 771, 23 Am. L. Rep. 1168.

*Por las razones expuestas debe confirmarse la resolución recurrida.*

Los Jueces Asociados Señores Hutchison y Córdova Dávila no intervinieron.